John P. MAGGARD, Petitioner,

v.

Harry K. SINGLETARY, Jr.,
et al., Respondents.

No. 94–060–CIV–ORL–18C.

United States District Court,
M.D. Florida,
Orlando Division.

Aug. 31, 1998.

John P. Maggard, Avon Park, FL, pro se.

James T. Skuthan, Fed. Public Defender's Office, Orlando, FL, for Petitioner.

Anthony J. Golden, Lori E. Nelson, Atty. General's Office, Dept. of Legal Affairs, Daytona Beach, FL, for Respondents.

### *ORDER*

G. KENDALL SHARP, District Judge.

Approved and so ordered, dismissed with prejudice.

### *REPORT AND RECOMMENDATION*

GLAZEBROOK, United States Magistrate Judge.

### I. PROCEDURAL HISTORY

Petitioner, John P. Maggard, filed a previous habeas petition in this Court in 1983

(case number 83–191–CIV–ORL–11), claiming that the trial court had improperly limited his cross-examination of two state witnesses at his 1977 trial. This Court denied the petition, and the United States Court of Appeals for the Eleventh Circuit affirmed. *See* Doc. No. 35, filed April 10, 1996.

Mr. Maggard then filed a second habeas petition in this Court (the instant petition), alleging four claims. This Court denied the petition as an abuse of the writ on the ground that Mr. Maggard could have asserted these four claims in his first petition, but he failed to do so (Doc. No. 23, filed July 25, 1994).

Mr. Maggard appealed to the Eleventh Circuit. The Court of Appeals held that Mr. Maggard was entitled to an evidentiary hearing in order to determine whether Mr. Maggard could establish cause and prejudice to excuse his abuse of the writ. *See* Page 5 of the Eleventh Circuit's Opinion. The Eleventh Circuit remanded the case to this Court for an evidentiary hearing on whether Mr. Maggard can establish cause and prejudice to excuse his abuse of the writ.

With respect to cause, the Eleventh Circuit required this Court to determine two issues of fact: 1) whether Mr. Maggard knew or could have reasonably discovered, prior to filing his first habeas petition in 1983, that the State's key witness, Norman E. Robbins,[1] was coerced to testify falsely after recanting an incriminating statement; and 2) whether Mr. Maggard knew or could have reasonably discovered that his attorney, Louis Lorincz, was aware of Mr. Robbins' alleged recantation yet failed to raise this as an issue at the trial. According to Mr. Maggard, he had not become aware of these additional facts—the basis for his claims of prosecutorial misconduct and ineffective assistance of counsel—until 1989 and 1993. In 1989, Mr. Maggard claims that Mr. Robbins first informed him of the alleged perjury and the attorney's knowledge of it. In 1993, Mr. Robbins prepared an affidavit recanting portions of his trial testimony. Mr. Maggard filed a copy of that affidavit as an attachment to his memorandum of law supporting his habeas petition (Doc. No. 2, filed January 21, 1994).

With respect to prejudice, the Eleventh Circuit has characterized the evidence of Mr. Maggard's guilt as *"overwhelming."* Because the Court of Appeals did not have the transcript of the 1977 trial, it could not assess how prejudicial the alleged perjury and coverup were to Mr. Maggard's defense. This Court held an evidentiary hearing on July 21, 1998, pursuant to an order of referral entered by United States District Judge G. Kendall Sharp on February 3, 1998 (Doc. No. 42).

## II. THE LAW

Mr. Maggard raised the following claims in the instant habeas petition: 1) the State knowingly and willfully used perjured testimony; 2) he was denied effective assistance of counsel; 3) the State introduced incriminating statements that were deliberately elicited from him in violation of his constitutional right to counsel; and 4) the State knowingly and willfully suppressed exculpatory evidence.

As previously discussed, the claims raised in the instant petition were not raised in Mr. Maggard's first habeas petition. A habeas petitioner abuses the writ by asserting claims for relief that were available but not raised in a previous petition. *United States v. Evans,* 1993 WL 503252, at *1 (8th Cir. December 9, 1993), *cert. denied,* 510 U.S. 1170, 114 S.Ct. 1204, 127 L.Ed.2d 552 (1994). To excuse the failure to raise a claim earlier, the petitioner must show cause for failing to raise it and prejudice therefrom; alternatively, the abuse of the writ is excusable if the petitioner can show that a fundamental miscarriage of justice would result from not considering the claims. *See Kennedy v. Singletary,* 967 F.2d 1482 (11th Cir.1992); *Singleton v. Thigpen,* 806 F.Supp. 936 (S.D.Ala. 1992). To satisfy the cause requirement, the petitioner must show that some objective factor external to the defense impeded counsel's efforts to raise this claim adequately or at all. *Singleton,* 806 F.Supp. at 940. However, "new grounds of relief may be dismissed if the petitioner's reasonable and diligent investigation would have enabled him to present these grounds in a previous habeas petition."

**1.** The appellate court incorrectly identified this    individual as "Walter Robbins."

*Weeks v. Jones,* 52 F.3d 1559, 1561 (11th Cir.), *cert. denied,* 514 U.S. 1104, 115 S.Ct. 1841, 131 L.Ed.2d 846 (1995) (quotation omitted). A fundamental miscarriage of justice results when a constitutional violation has probably resulted in the conviction of an actually innocent person. *Id.* at 941.

■■■ With respect to recanting witnesses, the Court notes that "recanting affidavits and witnesses are viewed with extreme suspicion by the courts." *United States v. Gresham,* 118 F.3d 258, 267 (5th Cir.), *cert. denied,* ── U.S. ──, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998). The Court also notes that the credibility of any habeas petitioner must be measured against his (or her) desire to relieve himself (or herself) from the conviction.

## III. APPLICATION TO MR. MAGGARD

The initial issue in this case, as summarized by the Eleventh Circuit, is as follows: "whether Maggard knew or could have reasonably discovered, prior to filing his first habeas petition in 1983, that: (1) Robbins recanted his statement prior to trial and was coerced by the prosecutor into testifying; and (2) his attorney was aware of the alleged recantation yet failed to raise this as an issue at the trial." *See* Page 3 of the Eleventh Circuit's Opinion.

At the evidentiary hearing held in this matter, the following individuals testified on behalf of Mr. Maggard: Mr. Robbins, who testified at Mr. Maggard's 1977 trial and implicated Mr. Maggard as the perpetrator of the crime; June Robbins, the wife of Mr. Robbins, who overheard an interrogation of Mr. Robbins by law enforcement officials; and Mr. Maggard. The following individuals testified on behalf of Respondents: Donald A. Lykkebak, the state prosecutor at Mr. Maggard's 1977 trial; and Louis Lorincz, Mr. Maggard's attorney in the state case.

Mr. Robbins testified that he had lied when he previously informed the police that Mr. Maggard had told him that he (Mr. Maggard) had shot and killed Mr. Hugh Fazende, their former employer. (Transcript of Evidentiary Hearing at 29.) Mr. Robbins said he made this statement in order to retaliate against Mr. Maggard for assaulting him and because he had been heavily drinking alcohol at the time. *Id.* at 31, 36, 49. According to Mr. Robbins, he later attempted to recant his statement to the police and spoke with Detectives Nazarchuk and Hansen about this. *Id.* at 32. Mr. Robbins stated that the detectives told him that he would not have to testify at trial. *Id.* at 30. When Mr. Robbins found out that he would be required to testify at trial, he again spoke with Detectives Nazarchuk and Hansen, who told him that if he did not testify they would "book [him] on murder." *Id.* at 34.[2] Mr. Robbins also stated that prior to trial he told Mr. Maggard's attorney about his attempt to recant his statement. *Id.* at 35–36. Mr. Robbins testified at the present hearing that, on the day of his testimony at the 1977 trial, he became ill in the restroom and that the prosecutor came into the restroom and told him to testify in order to get Mr. Maggard "out of here, out of [our] lives." *Id.* at 37.

Mr. Robbins visited Mr. Maggard during his incarceration, and in the late 1980's Mr. Robbins informed Mr. Maggard for the first time that he had attempted to recant his statement. *Id.* at 38. Mr. Robbins did not inform Mr. Maggard of this information previously because of "guilt." *Id.* at 40. Mr. Robbins met with Mr. Maggard approximately twice per month while Mr. Maggard was on death row. *Id.* at 43. Prior to the late 1980's, Mr. Robbins refused to discuss the matter with Mr. Maggard, and Mr. Maggard never asked him why he had lied at trial. *Id.* at 44. Mr. Robbins testified at the present hearing that he was recanting everything he said at the 1977 trial, but he did relate that Mr. Maggard had told him prior to the trial that "if I killed one old man, I could kill another." *Id.* Mr. Robbins said that he "made up" everything he testified about at trial, including that Mr. Maggard had parked his car at Big Daddy's prior to the murder, that Mr. Maggard had walked through the

---

2. June Robbins, who was the girlfriend of Mr. Robbins at the time he was questioned by the police, testified that she overheard Detectives Nazarchuk and Hansen tell Mr. Robbins that he should not change his testimony otherwise he could get prosecuted for murder. *Id.* at 78. However, the detectives never told Mr. Robbins to lie. *Id.* at 80. Ms. Robbins is now the wife of Mr. Robbins.

woods to get to the victim's house, that Mr. Maggard had shot at the victim's dog, and that Mr. Maggard had taken $100. *Id.* at 48–52.

The Court determines that the testimony of Mr. Robbins is not credible. The Court finds Mr. Robbins' testimony to have been evasive, vague, and internally inconsistent. It appears to the Court that Mr. Robbins has recanted portions of his trial testimony in an effort to relieve self-guilt for testifying against Mr. Maggard, his friend, and to assist Mr. Maggard in obtaining relief from the conviction.

Mr. Maggard testified that when Mr. Robbins first visited him at the jail after the conviction he asked Mr. Robbins about his trial testimony but that Mr. Robbins refused to answer. *Id.* at 86. Over time and after some probing, Mr. Robbins divulged additional information, and by 1989 Mr. Robbins told Mr. Maggard that he did not want to testify at trial, that he later tried to recant, and that he was threatened by the police into testifying. *Id.* at 86–88. However, Mr. Robbins did not reveal any of this information prior to when Mr. Maggard filed his first habeas petition. *Id.* at 88. Mr. Robbins had visited Mr. Maggard approximately fifty times between 1977 and 1983. *Id.* at 89. Although Mr. Robbins had testified that Mr. Maggard never asked him about why he had lied at trial, according to Mr. Maggard he did in fact ask Mr. Robbins about it. *Id.* at 90. The Court finds that Mr. Maggard's credibility is questionable because it must be measured against his desire to relieve himself from the conviction.

Donald Lykkebak, the prosecutor at Mr. Maggard's trial, testified that Mr. Robbins never stated that he wished to recant his testimony but that Mr. Robbins did not want to testify at trial because Mr. Maggard was his friend. *Id.* at 102, 122. Mr. Robbins did not say that he was threatened by the police into testifying. *Id.* at 102. Mr. Lykkebak prepared Mr. Robbins for the trial but did not tell him what to say, and Mr. Lykkebak had no reason to believe that the trial testimony of Mr. Robbins was untrue. *Id.* at 103–04. According to Mr. Lykkebak, the most important piece of evidence presented at trial was the shotgun. *Id.* at 105. Other trial witnesses testified about admissions made by Mr. Maggard. *Id.* Mr. Lykkebak subpoenaed Mr. Robbins to appear for trial but did not coerce him into testifying. *Id.* at 120–21. The Court finds the testimony of Mr. Lykkebak to be credible and demonstrates a prosecutor who was well-prepared and thorough at Mr. Maggard's trial and who in no manner coerced or otherwise threatened Mr. Robbins into testifying falsely or in any other improper manner at Mr. Maggard's trial.

Mr. Lorincz, Mr. Maggard's attorney at trial, testified that Mr. Robbins told him prior to trial that he wanted to withdraw the statement he gave to the police because it would have an adverse impact on Mr. Maggard. *Id.* at 125–26. Mr. Robbins always maintained that the statement he had given to the police was true and accurate. *Id.* at 126. Mr. Robbins did use the word "threat" with regard to his interaction with the police, but Mr. Robbins never indicated that the police had told him to testify falsely. *Id.* at 126, 133. The Court finds the testimony of Mr. Lorincz to be credible and shows a defense attorney who was well-prepared and thorough and was unaware that Mr. Robbins desired to recant his testimony prior to trial or that Mr. Robbins had otherwise been told to present or coerced into presenting false testimony at trial.

The Court finds that, although Mr. Robbins did not wish to testify at trial, there has been no showing that Mr. Robbins did not testify truthfully at trial or that Mr. Robbins prior to trial wanted to change the substance of the statement that he provided to the police. Moreover, although Mr. Lykkebak subpoenaed Mr. Robbins to testify at trial, Mr. Lykkebak did not coerce Mr. Robbins into testifying falsely or in any other improper manner at trial. Additionally, although Mr. Lorincz was aware that Mr. Robbins did not wish to testify at trial, there has been no showing that Mr. Lorincz knew that Mr. Robbins wanted to change the substance of the statement that he provided to the police. Both Mr. Lykkebak and Mr. Lorincz knew that Mr. Robbins did not want to testify at trial; however, they believed that Mr. Robbins did not want to testify because his testimony would have an adverse impact on his

friend, Mr. Maggard. Certainly, Mr. Robbins' testimony was not coerced by anyone, and Mr. Lorincz did not know that Mr. Robbins was supposedly testifying falsely at trial.[3] Accordingly, Mr. Maggard has not shown cause to excuse his abuse of the writ.

■ Further, as reflected above, there was ample evidence, even in the absence of Mr. Robbins' testimony, to support Mr. Maggard's conviction in this case. Hence, Mr. Maggard has not shown prejudice. Even if it is assumed that Mr. Robbins' trial testimony was false, there was ample other evidence to support Mr. Maggard's conviction. For example Jimmy Cunningham testified that he sold Mr. Maggard a shotgun and case in the middle of July, 1976. (Transcript of Trial at 154–58.) Steven Collins a police officer with the Orlando Police Department testified that he retrieved a shotgun from under Mr. Maggard's residence. *Id.* at 164–68. Allen Hansen, a detective with the Orange County Sheriff's Department, testified that Mr. Maggard told him that he was the owner of the shotgun. *Id.* at 190. Donald Champagne, a firearms expert with the Florida Department of Criminal Law Enforcement, indicated that the two shotgun shells found at the murder scene came from Mr. Maggard's shotgun. *Id.* at 210.

M.J. Dowda, Mr. Maggard's landlord, testified that Mr. Maggard contacted him by telephone the day after Mr. Maggard's arrest. *Id.* at 318. Mr. Dowda asked Mr. Maggard if he "had told Mr. Robbins that he had killed the old man," and Mr. Maggard replied "Yes." *Id.* at 319. Mr. Maggard called Mr. Dowda on a subsequent occasion and indicated that he had left two shotgun shells at the scene of the crime. *Id.* at 326.

Jeff Strickland, who was incarcerated with Mr. Maggard at the Orange County Jail following Mr. Maggard's arrest, testified that Mr. Maggard told him that he had killed the victim. *Id.* at 352–53. Mr. Maggard also told him that he had worked for the victim and that the police were in possession of the gun he had used. *Id.* at 352–53.

■ Finally, the Court finds that Mr. Maggard is unable to meet the "fundamental miscarriage of justice" exception since there has been no evidence that there existed a constitutional violation which probably resulted in the conviction of an actually innocent person. Therefore, since Mr. Maggard has not shown 1) cause or prejudice for failing to raise his claims in the previous petition, or 2) that a fundamental miscarriage of justice would result from not considering the claims, Mr. Maggard's habeas petition should be dismissed as an abuse of the writ.

## IV. CONCLUSION

The evidence presented at the evidentiary hearing demonstrates that there was an abuse of the writ with regard to the claims raised by Mr. Maggard in the instant habeas petition. Mr. Maggard has not established cause or prejudice to excuse the abuse of the writ, and Mr. Maggard also has not shown that a fundamental miscarriage of justice would result from not considering the claims. Therefore, Mr. Maggard's habeas petition should be dismissed as an abuse of the writ.

## V. RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed herein by John B. Maggard be **DENIED** as an abuse of the writ and that the case be **DISMISSED** with prejudice.

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 6.02 within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

August 11, 1998.

---

**3.** To the extent of any conflict between the testimony of Mr. Robbins and/or Mr. Maggard on the one hand and Mr. Lykkebak and/or Mr. Lorincz on the other hand, the Court rejects the testimony of Mr. Robbins and/or Mr. Maggard. The Court finds the testimony of Mr. Robbins and/or Mr. Maggard, to the extent of any conflict, to be unreliable.